William B. J. Tibbits v. Commissioner.
Tibbits v. Commissioner
Docket No. 2462-63.
United States Tax Court
T.C. Memo 1965-130; 1965 Tax Ct. Memo LEXIS 201; 24 T.C.M. (CCH) 663; T.C.M. (RIA) 65130; May 13, 1965
Nicholas Kapnistos, 917 15th St., N.W., Washington, D.C., for the petitioner. Stuart E. Seigel, for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax against petitioner for 1958, 1959 and 1960 in the amounts of $483.79, $673.65 and $746.48, respectively. Three issues are presented for decision: (1) whether petitioner is chargeable with income during all three years from a certain trust that was applied for the support and maintenance of his two minor children; (2) whether he is entitled to dependency *202 credit exemptions for those years in respect of those children; and (3) whether he is entitled to dividends received credits in 1959 and 1960 in excess of the amounts allowed by the Commissioner. Findings of Fact A stipulation of facts filed by the parties is incorporated herein by reference. Petitioner, William B. J. Tibbits, a resident of Washington, D.C., filed his individual Federal income tax return for each of the years 1958-1960 with the district director at Baltimore. Petitioner and Phyllis Steece were married in 1948. They had two children, William B. J. Tibbits, Jr., born in 1949, and Henry Bruce Tibbits, born in 1951. Marital differences arose between the spouses in 1951. They resided in a home in Arlington, Virginia, which petitioner had purchased with his own funds, but title to which was held jointly by them with common law right of survivorship. In May 1952, in anticipation of divorce, petitioner conveyed full title to the house to Phyllis. At that time it was intended and understood by both petitioner and Phyllis that the house or proceeds to be derived from the sale thereof would be used for the support and maintenance of the children and possibly also for *203 the support and maintenance of the wife until such time as she might remarry. On October 30, 1952, petitioner and Phyllis entered into an agreement, sometimes referred to as the Settlement Agreement, which provided in part as follows: Whereas the parties hereto, husband and wife, are at this time by reason of certain domestic difficulties, living separate and apart; and Whereas the said parties are now desirous of entering into an agreement for the purpose of confirming their separation and of determining and fixing their respective property rights in any and all property owned by them individually or jointly, and for the further purpose of making provision for the custody, maintenance and support of the children of the parties hereto, namely, WILLIAM BADGER JOHN TIBBITS, JR., age three years, and HENRY BRUCE STEECE TIBBITS, age one year. Now, therefore, * * * the said parties do hereby agree between themselves as follows: 1. The husband does hereby recognize and affirm a certain deed of bargain and sale heretofore entered into between his wife and himself under date of May 10, 1952, under the provisions of which he, the husband, releases to his wife, all right, title and *204 interest he then had or now has in a certain property occupied by them as a home and titled in their names as joint tenants with the common law right of survivorship, said property being more particularly designated and described as 1607 North Jefferson Street, Arlington, Virginia. 2. The wife does hereby agree that she will arrange to dispose of said property at public or private sale for the best price obtainable and that out of the proceeds therefrom she will place at least the sum of $22,000 in trust as hereinafter provided, * * *. Said trust shall provide that the trustee of said trust shall, after paying all proper charges and expenses of the trust and also paying income, property and other taxes, both Federal and State, arising on account of the principal and/or income of said trust, whether said taxes be assessed or assessable against the wife, husband, either of their said children, or said trust, distribute the remaining net income from the trust to the wife for her support and maintenance, and the support, maintenance and education of said children until the wife's death or her remarriage, whichever occurs earlier, whereupon said income from the trust shall be expended *205 only for the support, maintenance and education of said children until the youngest surviving child reaches the age of twenty-five years, at which time the trust shall terminate, if not earlier as hereinafter provided, and the corpus of the trust shall be divided equally between said children, and their issue, per stirpes and not per capita, but if one of said children shall have died leaving no issue then the trust corpus shall be distributed to the surviving child or his issue; in the event that the wife dies or is remarried and both of said children die leaving no issue, or the wife and said children and their issue shall all die in a common disaster, said trust shall terminate and the trust corpus and any income remaining shall be paid over to the husband, his heirs and assigns; and said trust shall further provide that the corpus of the trust may be invaded in the sole discretion of the trustee to the extent of one-half of the corpus of the trust for the purpose of paying necessary and extraordinary living and medical expenses of the children and of the wife until she remarries and to pay reasonable expenses of college educations for said children. 3. The wife is to have custody *206 of the children of the parties hereto, WILLIAM BADGER JOHN TIBBITS, JR., age three years, and HENRY BRUCE STEECE TIBBITS, age one year, subject to the right of the husband to have said children each year for a continuous period of at least two months during the summer, or any part of that time and in addition for the husband to have the right to have the children at other times when the same does not interfere with the children's education, but not to exceed a total of one month additional during any one year; * * * 4. The wife is to receive from the husband for maintenance, support and education of the children the amount of $75 per month for each child while the child is a minor, is not self-supporting and is in the custody of the wife, but in the event that the wife remarries then this said obligation of the husband shall be decreased to the extent of the net income from the trust hereinbefore provided; said payments by the husband are to commence on the day said children are delivered to the wife. * * *
10. * * * This agreement shall in no manner constitute a waiver of any cause or action for divorce which either party has against the other and in any suit that may be *207 instituted therefor, no maintenance or alimony or division of property shall be sought or obtained by one party against the other except as stated herein. * * * 11. The parties hereto further agree that this property settlement is to be offered for ratification and confirmation by a decree of divorce entered on behalf of either of them in any court of competent jurisdiction. * * * The Settlement Agreement represented a written expression of the intention and understanding of the parties as it existed at the time title to the house was conveyed to Phyllis in May 1952. On February 11, 1953, the Circuit Court of Arlington County, Virginia, granted a divorce a mensa et thoro to Phyllis on the grounds of desertion on the part of petitioner. Pursuant to the provisions of the Settlement Agreement and the divorce decree of February 11, 1953, the house was sold and the proceeds derived therefrom, in the amount of $21,700, were transferred in trust, which trust is hereinafter sometimes referred to as the House Trust, pursuant to an agreement dated April 28, 1953, executed by Phyllis (as "Donor") and the Union Trust Company of the District of Columbia (as "Trustee"). Said agreement, hereinafter *208 sometimes referred to as the Trust Agreement, provided in part as follows: NOW, THEREFORE * * * the Donor has delivered to the Trustee the securities and/or cash described in Schedule "A" identified by the signatures of the Donor and the Trustee and accompanying this agreement, but which need not be exhibited as a part hereof for general purposes. TO HAVE AND TO HOLD the same, together with any and all other property that may hereafter be delivered to the said Trustee by the Donor during her lifetime, which right she hereby reserves under the terms of this agreement, IN TRUST, nevertheless, for the following uses and purposes to wit: * * *
TWO: (a) To pay the net income to the Donor in convenient installments or to expend said income for the support and maintenance of the Donor and the support, maintenance and education of the Donor's children, William Badger John Tibbits, Jr., born January 25, 1949, and Henry Bruce Steece Tibbits, born June 12, 1951, until the Donor's death or remarriage, whichever is the first to occur. (b) Upon the death or remarriage of the Donor, to expend the net income for the support, maintenance and education of the Donor's two children heretofore *209 mentioned until their death or the termination of the trust. (c) This trust shall terminate upon the death or remarriage of the Donor or upon the youngest surviving child reaching the age of twenty-five (25) years or upon the death of both children before the youngest surviving child reaches the age of twenty-five (25) years whichever event is the last to happen. Upon such termination, the principal, together with all accrued and accumulated income, shall be divided and distributed equally to the Donor's said children. If either of said children be deceased leaving descendants, the share of said deceased child shall be distributed among said descendants, per stirpes. If either be deceased without leaving descendants surviving, then the entire fund and accrued and accumulated income shall be distributed to the surviving child or to the descendants, per stirpes, of the deceased child who left descendants surviving. (d) In the event that the Donor dies or remarries and both of said children die before the termination of the trust as heretofore provided, without leaving descendants, or the Donor and said children and the descendants of the children shall all die in a common disaster, *210 the Trust shall terminate and the principal and accrued and accumulated income shall be paid over and distributed to William B. J. Tibbits, former husband of the Donor, of if he be not living, to the personal representative of his estate to be distributed in accordance with such Last Will and Testament as he may have left, or if he fails to leave a valid Last Will and Testament, then in accordance with the intestate laws of the place of his domicile. (e) In the event that at any time in the sole and uncontrolled judgment of the Trustee it is necessary, the Trustee may distribute to the Donor and said children, or expend for their benefit, such portion of the principal as is necessary for extraordinary living and medical expenses of the children and of the Donor and to meet reasonable expenses of college educations for said children, provided, however, that the total of amounts so spent from time to time shall not exceed Eleven Thousand Dollars ($11,000.00) and provided further that no payments hereunder shall be made for the Donor after her remarriage. * * * The Settlement Agreement and the Trust Agreement were properly executed and witnessed. A place was provided in the Trust *211 Agreement for the signature of petitioner to express his ratification and approval thereof. By final decree dated May 27, 1953, the Circuit Court of Arlington County, Virginia, awarded Phyllis a divorce a vinculo matrimonii from petitioner. The decree ratified, approved, and confirmed the Settlement Agreement. Prior to January 1, 1958, Phyllis had remarried. During the years 1958, 1959, and 1960 Phyllis received $722.11, $721.04, and $864.29, respectively, from the House Trust for the support, maintenance, and education of the children. To the extent petitioner's obligation to provide support for the children during the years 1958, 1959, and 1960 exceeded the distributions made by the House Trust to Phyllis, such obligation was satisfied by payments from petitioner's own funds and by distributions from another and separate trust created by petitioner, referred to herein as the Tibbits Trust. During each of the years 1958 and 1960, the children were in the custody of Phyllis for 10 months of the year and in the custody of petitioner for two months of the year. In 1959 one of the children, Henry Bruce, was in Phyllis's custody for the entire year while the other child, William, *212 was in her custody for 10 months and in petitioner's custody for two months. Consequently, petitioner's obligation to provide for the support, maintenance, and education of the children while they were in Phyllis's custody was $1,500 in 1958, $1,650 in 1959, and $1,500 in 1960, being $75 per month for each child while in her custody. Such obligation, in each of the years 1958, 1959, and 1960 was satisfied by distributions made to Phyllis from the House Trust in the aforementioned amounts and by additional sums furnished by petitioner from his own funds and from the income of the Tibbits Trust. During the two month period when petitioner generally had custody of the children, they spent most of the time at the home of petitioner's mother at Murray Bay, Canada. Petitioner's mother furnished the expenses for the support of the children while they visited at her home. In addition to the foregoing, petitioner expended the following amounts with respect to the children during the indicated taxable years: 1958: $350 transportation expenses; $60 dental or optometric expenses; 1959: $220 transportation expenses; $50 medical expenses; 1960: $350 transportation expenses, $50 medical expenses. *213 Petitioner had a one-fourth beneficial interest in a testamentary trust created by his grandmother, Lady Sarah M. Harris. This trust, referred to herein as the Harris Trust, was administered by the Royal Trust Company, Montreal, Canada. In his Federal income tax returns for the taxable years 1958, 1959 and 1960, petitioner included in his income the amounts of $1,120.65, $2,268.70, and $2,177.38, respectively, as income derived from the Harris Trust. These amounts were also included in the amount of dividends upon which petitioner computed the dividends received credit for each of said years. Respondent determined that for the taxable year 1958 petitioner was entitled to a dividends received credit in the amount of $74.80, although he claimed a credit of only $40.70 on his return for said year. Respondent also determined that for the taxable years 1959 and 1960 only the amounts of $1,939 and $1,783.05, respectively, received from the Harris Trust constituted dividends received from domestic corporations and thus qualified as dividends subject to the dividends received credit. Respondent accordingly disallowed $87.10 and $91.75, respectively, of the dividends received credit claimed *214 by petitioner for the taxable years 1959 and 1960. Opinion RAUM, Judge: 1. Taxability of trust income. During the years 1958-1960, the House Trust produced income in the amounts of $722.11, $721.04 and $864.29, respectively, which were paid over to petitioner's divorced wife for the support of their two children. These amounts were applied to discharge pro tanto petitioner's contractual obligation to support those children to the extent of $75 a month for each child while in the custody of the wife. The Government's theory in attributing the foregoing amounts of trust income to the husband is that the corpus of the House Trust had its source in the petitioner, that he was the real grantor of the trust, and that therefore the income therefrom is taxable to him since it was in fact used to discharge in part his obligation to support his children. Section 677(b), Internal Revenue Code of 1954. The difficulty with the Government's contention is its position that petitioner must be treated as the sole grantor of the trust. True, if petitioner had been the sole owner of the property in May 1952 when full title was placed in the wife in anticipation of divorce, *215 the subsequent creation of the trust in October 1952 by the wife in accordance with their May 1952 understanding could be treated as though the husband himself were the grantor. But petitioner was not the sole owner of the property in May 1952. To be sure, the property had been purchased some years earlier with funds supplied by him, but it was held jointly by petitioner and his wife with common law right of survivorship. The record does not disclose whether she acquired her one-half interest by gift or otherwise, but the fact is that she was a joint owner of that property in May 1952, and that petitioner's transfer to her in May 1952 covered only his remaining joint interest therein. Accordingly, we hold that to the extent of one-half of the corpus of the House Trust, petitioner's wife was the true grantor in substance as well as form, and that one-half the income of the trust in each of the years 1958-1960 may not be attributed to him. We think, however, that he may properly be characterized as the true grantor in respect of the remaining one-half of the corpus and that the income to that extent is chargeable to him. Cf. Frank E. Joseph, 5 T.C. 1049; Stern v. Commissioner, 137 F. 2d 43 *216 (C.A. 2). 2. Dependency exemptions. Whether petitioner is entitled to the dependency exemptions claimed by him during each of the years for his two children depends solely upon whether he in fact furnished more than one-half of their support during these years. Section 152, Internal Revenue Code of 1954. Although the amounts paid by petitioner for the support of his children are shown in the record and are set forth in our findings, the record is devoid of evidence as to the amounts expended by petitioner's former wife. Bearing in mind that some of the children's support was supplied by petitioner's mother and some by his former wife, we are wholly unable to find on this record that the children received over one-half their support from petitioner. The burden of proof was a difficult if not an impossible one to carry, in view of the wife's apparent lack of cooperation, but we know of no statutory ground for relieving him of that burden. Accordingly, the Commissioner's action in respect of this issue must be approved for failure of proof. Cf. Bernard C. Rivers, 33 T.C. 935; Walter H. Mendel, 41 T.C. 32. 3. Dividends received credit. *217 The issue here is whether the Commissioner properly computed the dividends received credit for 1959 and 1960. Petitioner was a beneficiary of a Canadian trust established by his grandmother. He received $2,268.70 and $2,177.38 therefrom in 1959 and 1960, respectively, and in reporting these amounts on his returns he treated them as dividends received from American corporations. The Commissioner recomputed the dividends received credits for each of those years, treating the 1959 distribution as consisting of dividends from American corporations to the extent of $1,939 and the 1960 distribution as consisting of dividends from American corporations to the extent of $1,783.05. The burden of showing that the Commissioner erred was upon petitioner and it has not been carried. An exhibit introduced by petitioner - a letter dated February 16, 1960, containing a valuation of the trust portfolio and estimated annual income as of January 29, 1960 - is highly unsatisfactory in respect of the precise issue before us. [1] We cannot say on the evidence of record that petitioner received dividends from domestic corporations in excess of the amounts used by the Commissioner in his computation. This *218 issue must be decided against petitioner for failure of proof. Decision will be entered under Rule 50. Footnotes
1. This exhibit certainly does not show that the dividends received by petitioner from domestic corporations in 1959 and 1960 exceeded the amount of such dividends used by the Commissioner in computing the allowable credits for those years. Indeed, the exhibit indicates that nearly half of the estimated trust income was derived from bonds rather than stock, and even puting the dividends received credits as he did, as to the remaining income from stock some of the corporations listed do not appear to be domestic corporations. It is abundantly clear from the contents of this exhibit that it is not of such character as to carry petitioner's burden of proof, and, if anything, it suggests that the Commissioner has been too generous in computing the dividends received credits as he did.↩